UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SONIA FORDHAM and JOHN FORDHAM,

                    Plaintiffs,                    **MEMORANDUM & ORDER**

    -against-

                                                        Civil Action No. 08-2310
ISLIP UNION FREE SCHOOL DISTRICT                 (DRH) (WDW)
and DIANE DRUCKMAN,

                    Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
**Reilly & Reilly**
170 Old Country Road, Suite 308
Mineola, New York 11501
By:    David T. Reilly, Esq.

**For Defendants:**
**Cruser, Mitchell & Novitz, LLP**
175 Pinelawn Road, Suite 301
Melville, New York 11747
By:    Rondiene E. Novitz, Esq.
        Keith V. Tola, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs Sonia Fordham ("Plaintiff" or "Fordham") and John Fordham ("John Fordham") commenced this action alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and the New York State Human Rights Law "NYSHRL"), N.Y. Exec. Law § 296, et seq. , as well as other state and common law causes of

action.[1] Presently before the Court is the motion of Defendants Islip Union Free School District (the "District") and Diane Druckman ("Druckman") (collectively "Defendants") to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] For the reason set forth below, the motion is granted in part and denied in part.[3]

**Factual Background**

The following allegations are taken from the complaint. To the extent they are factual and non-conclusory, they are presumed true for purposes of this motion.[4]

Plaintiff, who was born in 1948, was hired by the District in 1992 as a first grade teacher; she received tenure in 1994. (Compl. ¶¶ 8,17, 18.) Since 1995 Plaintiff has been assigned to teach first grade at the Wing Elementary School where her immediate supervisor has been Druckman, principal of the school. Throughout her employment with the District, Plaintiff has received favorable evaluations and in 2006 was honored as "Educator of the Year" by the Islip

---

[1] The complaint asserts the following state and common law causes of action: defamation, prima facie tort, intentional infliction of emotional distress, abuse of process, malicious prosecution and violation of the New York State Whistle Blower Laws.

[2] The Court notes the statement in Plaintiffs' Memorandum opposing Defendants' motion to dismiss, that "Plaintiffs seek to amend their complaint to include more recent events and to address any deficiencies that may be found by this Court." Pls.' Mem. at 3. Such a statement is insufficient, however, to constitute a motion to amend the complaint.

[3] In response to Defendants' motion to dismiss, Plaintiffs have withdrawn the abuse of process and New York State Whistle Blower claims. *See* Reilly Affirmation (Dkt. No. 9) at 1. Accordingly, those claims are dismissed without prejudice. In addition, Plaintiff has acknowledged that Druckman may not be held liable under the ADEA. Accordingly, the ADEA claims are dismissed as against Druckman.

[4] The Court shall not consider, however, those additional assertions, i.e. assertions not contained in the Complaint, that are sprinkled throughout Plaintiff's Memorandum in Opposition.

Children's Endowment. (*Id.* ¶¶ 19-21.)

During the 2006/2007 school year, the District provided the faculty with information concerning learning centers; Druckman advised Plaintiff that she was not required to incorporate learning centers into her classroom. (Compl. ¶¶ 22-23.) In March 2007, Druckman questioned Plaintiff about the amount of classroom time she used for arts and crafts. At a meeting held the following month, Druckman requested that Plaintiff limit arts and crafts in her classroom. (*Id.* ¶¶ 24-25.)

Druckman scheduled a plan book meeting with Plaintiff for April 25, 2007 and advised her to have a union representative present. According to Plaintiff, the meeting was conducted in a "harassing and demeaning manner in retaliation" for Plaintiff's efforts (1) "to voice her professional views on the use of arts and crafts in the classroom," (2) "to have 'Stop' signs replaced at the school which were missing," and (3) "have asbestos tiles removed from an instructional wing" of the school. (Compl. ¶¶ 26-28.) Plaintiff also claims that the tenor of the meeting was intended to "encourage and/or force" her to retire at the end of the year. (Compl. ¶ 29.)

On June 8, 2007 Druckman, "with malice, prepared an email and on June 11, 2007 caused said email to be widely distributed and disseminated throughout Wing Elementary School. " (Compl. ¶ 30.) The e-mail states in relevant part:

> And thank you for listening to me yesterday . . . especially about SF. I know she is meeting with you to indicate what a fine teacher she is and how her students are doing so well . . . but she has some students she would like to retain and others are not doing "so well" and in her model (she has sideways rows of 4 since the BER conference) she never can read with them alone more than 2/week . . . others are able to read with their lowest daily . . . it's

> the parents fault since they have rejected retention. Just the
> thought of her revs me up . . . thanks for doing your magic to
> remind her of the expectations for next year from "the educator of
> the year." That may help to deal the deal. Have a super day.

(Compl.¶ 30 & Ex. A.)

On June 19, 2007, Plaintiff received an end of year evaluation in which Druckman claimed disappointment that Plaintiff had not used learning centers during the school year despite having twice assured Plaintiff that she was not required to incorporate them. (Compl. ¶ 32.)

During the summer of 2007, Plaintiff's counsel wrote to both the District and the District's attorneys to "advise" them of "the adverse, harassing and discriminatory actions being taken by . . . Druckman against [Plaintiff] because of her age. " (Compl. ¶¶33-34.)

In September 2007, Plaintiff began the school year as a first grade teacher at Wing Elementary. On September 11, 2007 she was notified that she was to meet the following day with an attorney for the District. Plaintiff did meet with counsel and advised counsel that she wanted the District "to be aware of the problems so that no further adverse action would be taken against her." (Compl. ¶¶ 35-37.) According to Plaintiff, the District and its attorneys failed to properly investigate her claims of age discrimination and counsel prepared a document "purporting to be the findings of her investigation stating that there was no evidence of discrimination." (Compl. ¶ 39.)

Two days after the investigation report was issued, Plaintiff was called out of her classroom at Wing Elementary and directed to a meeting where "she was advised by school officials that an allegation of child abuse was made against her." (Compl. ¶ 40.) The allegation, to which Plaintiff attaches the label "child abuse," was made by Druckman and arose from her

"purported observations" of which she prepared a written report. (*Id.* ¶¶ 41-42.) Druckman's report states in pertinent part:

> I stopped into several classrooms, and then stood outside the door of room 201, as the door was closed.
>
> As I looked into the classroom at approximately 1:02 p.m. I noted the class writing on small pieces of blue paper. There were water bottles on many children's desks. I noted one child in the last row of students from the door, at the end of that row. The child, [name], was drinking from her water bottle. I saw Mrs. Fordham walked [sic] quickly to the desk of that child from what appeared to be the front of the classroom. Mrs. Fordham took the water bottle from [the child's] hand as it was near her mouth, reach onto the desk and capped the water bottle. Mrs. Fordham then placed the water bottle on the desk. She then tapped the child on the head using her open hand. The child did not react to the tap, but picked up her pencil and began writing.
>
> [The child involved] is a child that Mrs. Fordham has brought to the attention of the social worker and psychologist. They are working with Mrs. Fordham to create a positive learning plan and behavior chart for this youngster. Earlier in the day, Mrs. Fordham brought to the attention of the aforementioned individuals that [the child] was going home on a play date with another child. She told the psychologist and the social worker that she could "use this" and tell [the child] that if she didn't behave that she couldn't go on the play date. When they suggested that it was up to the parent, Mrs. Fordham said that she would call the parent. Both professionals counseled her that using the play date as a positive, rather than a negative might be more effective. My concern was that tapping [the child] on the head was not the most effective way to deal with this situation.

(Ex. B to Compl.) "As a result of the notification of this false charge made against her" plaintiff was taken ill and has been unable to return to the classroom. (Compl. at ¶ 45.) Plaintiff "applied for catastrophic sick leave" and "was wrongfully denied same" by the District. (*Id.* ¶47.)

## Discussion

**I.      Motion to Dismiss Standard**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II. ADEA Claims

Plaintiff alleges two claims under the ADEA. First, she claims that she was subjected to a hostile work environment because of her age. Second, she claims that she was retaliated against for engaging in protected activity. The Court shall address each of these claims in turn.

### A. Hostile Work Environment

"An actionable discrimination claim based on hostile work environment under the ADEA

7

is one for which 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Kassner v. 2nd Avenue Deli. Inc.*, 496 F.3d 229, 239 (2d Cir. 2007) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).[5]

To establish a hostile work environment claim, a plaintiff must prove "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The plaintiff must "show that the complained of conduct: (1) 'is objectively severe or pervasive - that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [age].'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (ellipses in original omitted) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). In other words, the plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his/]her employment were thereby altered." *Alfano*, 294 F.3d at 373 (internal citations omitted).

"This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the

---

[5] Hostile environment claims are governed by the same standards under the ADEA, Title VII and the NYSHRL. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). Accordingly, the Court's discussion is equally applicable to Plaintiff's hostile work environment claim under the NYSHRL.

8

victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In analyzing a plaintiff's case, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.* (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) and *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 437 (2d Cir. 1999)).

As the Second Circuit has noted on more than one occasion:

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.' " (alteration and emphasis in the original).
>
> *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Whidbee v. Garzarelli Food Specialties, Inc*., 223 F.3d 62, 70 (2d Cir. 2000)). "The environment need not be 'unendurable' or 'intolerable.'" *Id.* In brief, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Id.* (quoting *Whidbee*, 223 F.3d at 70 (internal quotation marks omitted)).

*Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)

"Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who [him]self experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support [his] claim." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "Nor must offensive remarks or behavior be directed at individuals who are members of the plaintiff's own protected class. Remarks targeting members of other minorities, for example, may contribute to the overall hostility of the working environment for a minority employee." *Id.*

Finally, it is axiomatic that in order to establish a hostile work environment, a plaintiff must demonstrate that the conduct occurred because of his membership in a protected class, here the age of forty or over. In other words, "an environment which is equally harsh for . . . both young and old does not constitute a hostile working environment under the civil rights statutes." *See Brennan,* 192 F.3d at 318. *See also Alfano,* 294 F.3d at 374 ("in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex"). "Although incidents comprising a hostile work environment claim need not make reference to any trait or condition on the basis of which the discrimination has occurred, they must occur under circumstance in which the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." *Parekh v. Swissport Cargo Services, Inc.*, 2009 WL 290465, at * 4 (E.D.N.Y. Feb. 5, 2009) (internal quotations omitted).

The allegations made by Plaintiff, even assumed to be true, are insufficient to justify a conclusion that Plaintiff is entitled to a remedy based on am age-related hostile work

environment. *See, e.g., id.* at *5; *cf. Ortiz-Moss v. N.Y. City DOT*, 2008 U.S. Dist. LEXIS 32048, at *51-52 (S.D.N.Y. Apr. 18, 2008); *see generally Cruz*, 202 F.3d at 570 ("Isolated instances of harassment ordinarily do not rise to th[e] level [of hostile work environment].") Plaintiff's complaints regarding the planning book meeting, the e-mail and her end of year evaluation contain no suggestion that this conduct was engaged in because of plaintiff's age, let alone that the "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment." *Harris*, 510 U.S. at 21. *See also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("not all workplace conduct that may be described as harassment affects . . . employment within the meaning of Title VII."); *Vandermark v. City of New York,* 615 F. Supp. 3d 196, 209 (S.D.N.Y. 2009) (Title VII claims are predicated on discrimination because of protected category; mere allegations of hostility by themselves are insufficient to support hostile work environment claim); *Field v. Tonawanda City School Dist.*, 604 F. Supp. 544, 560-61 (W.D.N.Y. 2009).

The motion to dismiss the hostile work environment claim under the ADEA and the New York State Human Rights Law is granted.

**B. Retaliation Claim**

"The ADEA prohibits an employer from discriminating against an individual employee because of the individual's opposing any practice made unlawful under the statute." *Kassner*, 496 F.3d at 241.[6]

---

[6] Retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII and the ADEA. *See Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). Accordingly, the Court's discussion applies also to Plaintiff's NYSHRL claim for retaliation.

In order to state a claim for retaliation under the ADEA a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000); *accord Kessler v. Westchester County Dept of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). "The anti-retaliation provision of [the ADEA] unlike [its] substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern and Santa Fe Railway Company v. White,* 548 U.S. 53, 67 (2006); *see Kessler*, 496 F.3d at 209. Rather, a retaliation plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White,* 548 U.S. at 68 (internal quotations omitted); *Kessler,* 461 F.3d at 209.

Plaintiff has alleged sufficient facts to state a claim for retaliation. She alleges a protected activity of which the District was aware, to wit her counsel's letters to the District and the District's attorneys regarding claims of age discrimination and harassment by Druckman. She also alleges a specific act taken in retaliation for those complaints, i.e., Druckman's allegation of child abuse against her and the denial of catastrophic leave. Assuming the truth of Plaintiff's allegation, as the Court must on a motion to dismiss, an allegation of child abuse against a teacher, even if false, and a denial of leave might well dissuade a teacher from making or supporting a charge of discrimination.

The District's motion to dismiss the retaliation claims under federal and state law is denied.

**III. Defamation**

Defendants move to dismiss Fordham's defamation claims contending that neither Druckman's June 8, 2007 e-mail nor her September 27, 2009 report constitute defamatory statements.

Under New York Law, in order to establish a defamation claim, a plaintiff must prove (1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) by the defendant, 4) with injury to the plaintiff. *See Boyd v, Nationwide Mutual Ins. Co.,* 208 F.3d 406, 409 (2d Cir. 2000); *see also Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001). A defamatory statement of fact is one that "tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an evil opinion of him in the minds of right-thinking people to deprive him of their friendly intercourse in society." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977). "[I]f the language is not of such a nature, that is, if it merely constitutes a general reflection on a person's character or qualitites, it is not a matter of such significance and importance as to amount to actionable defamation even though it may be unpleasant, annoying, or irksome, or may subject the plaintiff to jests or banter so as to affect his feelings." N.Y. Jur. Defam. § 5.

When a defamation claim is challenged on a motion to dismiss, the court's role is as follows:

> Determine whether the statements at issue are "reasonably susceptible of a defamatory connotation." If the Court deems the statements to be reasonably susceptible to a defamatory interpretation, then "it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the average and ordinary" listener. Further, because the Court accepts plaintiff's allegations as true, it assumes that defendants'

13

> statements are false and that the defendants were culpable in making the statements. In interpreting allegedly defamatory statements, the Court must view the statements in context as the literal meaning of the words does not always coincide with their meaning in a grander setting. The statement in question should not be viewed in isolation, but instead should be interpreted in light of the "whole apparent scope and intent" of the statements. Finally, if the statement in question is reasonably susceptible to more than one interpretation, one of which is not defamatory, 'it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood.

*Henneberry v. Sumitomo Corp. of Am.*, 2005 WL 991772, at * 15 (S.D.N.Y. Apr. 27, 2005) (citations omitted).

New York law provides absolute immunity from defamation claims for statements of opinion. *Celle v. Filipino Reported Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). 'To determine whether a statement is a fact or opinion, a court evaluates four factors: (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Donofrio-Ferrezza v. Nier*, 2005 WL 2312477, at * 6 (S.D.N.Y. Sept. 21, 2005) (internal quotations omitted) (citing *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986)). "If a statement of opinion implies that it is based on facts that support the opinion, but are unknown to persons reading or hearing it, the statement is an actionable

mixed opinion. However, a statement of opinion made after a recitation of facts disclosed to the reader or listener, or not based on facts unknown to the reader or listener, is not actionable." *Id.* (citing *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993). "'The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.'" *Id.* (quoting *Steinhilber*, 68 N.Y.2d at 290).

Turning first to the June e-mail, as a matter of law, the statements contained therein are statements of opinion and are not reasonably susceptible of defamatory content. There is nothing in the email that "tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an evil opinion of [her] in the minds of right-thinking people to deprive [her] of their friendly intercourse in society." *Rinaldi,* 42 N.Y.2d at 379.

Druckman's allegations regarding the alleged head tapping incident and her September 27, 2009 report, however, stand on a different footing even though the inflammatory label of "child abuse" is one provided by Plaintiff and not Druckman in her report. Notwithstanding Defendants' attempt to characterize the report as opinion because of language that tapping a child on the head "was not the most effective way to deal with this situation," when read as a whole and in the context of a school setting the report is reasonably capable of defamatory content. The allegation that an elementary school teacher tapped the head of one of her students with an "open hand" is capable of being interpreted as a teacher inappropriately touching a student. Such an allegation would "tend[] to expose . . . plaintiff", an elementary teacher, to "ridicule, aversion, or disgrace." *Rinaldi*, 42 N.Y.2d at 379.

15

Even assuming Defendants' claim of privilege is properly asserted in a pre-answer context, the Court is unpersuaded by the argument that the report is privileged because it was made only to school officials who share a common interest in the subject matter. It is true that "[a] communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he had a duty, is privileged if made to a person having corresponding interest or duty, although it contain incriminating matter which, without this privilege, would be slanderous and actionable; and this though the duty not be a legal one, but only a moral or social duty of imperfect obligation." *Henneberry*, 2005 WL 991772 at *17 (quoting *Shapiro v. Health Ins. Plan*, 7 N.Y.2d 56, 60-61 (1959)). However, "[a] party's good faith communication with a party having a common interest creates [only] a rebuttable presumption that a defamation action cannot be maintained. The presumption is rebutted . . . if the statements were: (1) made for purposes beyond the scope of the privilege where a defendant does not exercise the privilege in a reasonable manner, abuses the occasion, or makes the statement in furtherance of an improper purpose; (2) made with common law malice, considering defendant's personal spite or ill-will; or (3) made with knowledge of falsity or reckless disregard of the truth." *Id.* (internal quotations and citations omitted). Here, Plaintiff claims that the report was made with malice, as well as for an improper purpose, to wit in retaliation for her complaints of age discrimination by Druckman.

The motion to dismiss the defamation claims is granted as to the June 2007 e-mail but denied as to Druckman's allegations regarding the head tapping incident, including her September 27, 2009 report.

## IV. Malicious Prosecution

The tort of malicious prosecution requires the improper initiation or continuation of a criminal prosecution or civil litigation. *See* 2 N.Y. Pattern Jury Instr. § 3:50, at 454 (2009). The instant complaint contains no allegations as to the existence of a civil or criminal proceeding against Plaintiff. The motion to dismiss the malicious prosecution claim is granted.

## V. Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress is premised upon Druckman's allegations regarding the head tapping incident, including her September 27, 2009 report. *(See* Pls.' Mem in Opp. at 15.)[7] As such, this claim falls within the ambit of the tort of defamation. Where, as here, a claim for intentional infliction of emotional distress falls within the ambit of another tort, it should be dismissed. *See Rivers v. Towers, Perrin, Forster & Crosby Inc.*, 2009 WL 817852, at * 9 (E.D.N.Y. Mar. 27, 2009) (dismissing claim for intentional infliction of emotional distress because it overlapped with defamation claim) (citing *Hirschfeld v. Daily News, L.P.*, 269 A.D.2d 248, 249, 703 N.Y.S.2d 123, 124 (1st Dept. 2000)).

The motion to dismiss the intentional infliction of emotional distress claim is granted.

## VI. Prima Facie Tort

"The elements of prima facie tort are (1) the intentional infliction of emotional harm, (2)

---

[7] To the extent the claim for intentional infliction of emotional distress is meant to include the allegations regarding the limit set on Plaintiff's use of arts and crafts in the classroom, the plan book meeting, the evaluation and the June e-mail, these occurrences fail, as a matter of law, to constitute conduct so extreme as to go beyond all possible bounds of decency, the standard applicable for claims of intentional infliction of emotional distress. *See generally Howell v. New York Post, Co.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993).

which results in special damages, (3) without any excuse or justification, (4) by act or series of acts that would otherwise be lawful." *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 465 (E.D.N.Y. 2002) (citing *Burns Jackson Millet Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 322 (1983)); *see Discover Group v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 87 (E.D.N.Y. 2004). "[T]he plaintiff must allege that malevolence is the sole motive for the defendant's otherwise lawful act or . . . unless the defendant acts from disinterested malevolence . . . by which is meant that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another. Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's sole motivation was disinterested malevolence, the complaint will be dismissed." *T.S. Haulers*, 190 F. Supp. 2d at 465-66 (internal quotations and citations omitted). In addition "special damages must be alleged with sufficient particularity to identify actual losses and round sums without any attempt at itemization are insufficient." *Discover Group*, 333 F. Supp. 2d at 87. Because the complaint fails to allege special damages or malevolence, the claim for prima facie tort is dismissed.

## Conclusion

For the reason set forth above, Defendants' motion to dismiss the complaint is granted as to (1) all ADEA claims as against Druckman; (2) the ADEA and NYSHRL claims for hostile work environment; (3) the defamation claim arising from the June 2007 e-mail; (4) the claims for abuse of process, malicious prosecution, intentional infliction of emotional distress and prima facie tort; and (5) the New York State Whistle Blower claim. The motion is denied as to (1) the

claims against the District under the ADEA and the NYSHRL for retaliation; (2) the claim against Druckman for retaliation under the NYSHRL; and (3) the defamation claim arising from Druckman's allegations regarding the head tapping incident and her September 27, 2009 report.

Dated: Central Islip, New York
      September 11, 2009

/s/
Denis R. Hurley
Senior District Court Judge